## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-2992

**ONYX ENTERPRISES INT'L, CORP.**, a New
Jersey corporation,

     **Plaintiff,**

v.

**SLOAN INTERNATIONAL HOLDINGS
CORP,** a Florida corporation, and **JONATHAN
SLOAN**, individually,

     **Defendants.**

---

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

---

Plaintiff Onyx Enterprises Int'l, Corp. ("Plaintiff" or "Onyx"), by and through undersigned counsel, hereby sues Defendants Sloan International Holdings Corp ("Sloan International") and Jonathan Sloan ("Sloan" or "Mr. Sloan") (collectively "Defendants") and alleges as follows:

## NATURE OF ACTION

1.  This case involves Defendants' intentional and blatant infringement and counterfeiting of Onyx's likeness and well-known trademarks, including CARiD® and other iD marks (collectively, the "iD Marks") used in connection with the sale of automotive parts and accessories.

2.  Defendants have been selling automotive parts and accessories under the name RIMSiD on www.RIMSiD.com.  Defendants have been shamelessly and systematically incorporating and copying Onyx's trademarks and likeness in order to hold itself out as an Onyx

brand, to mislead consumers into believing that RIMSiD is associated with Onyx's iD brands, and to steal Onyx's customers.

3.     Defendants' infringement of Onyx's distinctive trademarks and its unauthorized use of its likeness encroach upon any acceptable notion of fair competition.  Therefore, Onyx brings this action for damages and injunctive relief for trademark counterfeiting, trademark infringement, unfair competition, false designation of origin, dilution, and cybersquatting pursuant to the Lanham Act (15 U.S.C. § 1051, *et seq.*), and trademark infringement, unfair competition, and deceptive trade practices pursuant to the common law of the State of Colorado and the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*

## PARTIES

4.     Plaintiff Onyx is a corporation duly organized and existing under the laws of the State of New Jersey, with its principal place of business at 1 Corporate Drive, Suite C, Cranbury New Jersey 08512.

5.     Upon information and belief, Defendant Sloan International is a Florida corporation with a principal place of business at 14359 Miramar Parkway, Suite 237, Miramar, FL 33055.

6.     Upon information and belief, Defendant Sloan International operates and controls the website www.RIMSiD.com.

7.     Upon information and belief, Defendant Sloan is an individual resident of Florida State residing or maintaining a place of employment at 21493 NW 39th Ave., Miami Gardens, FL 33055.

8.     Upon information and belief, Defendant Sloan is the registered owner of the website www.RIMSiD.com.

9.     Upon information and belief, Defendant Sloan is the owner and registered agent of Sloan International and has authorized or directed the counterfeit and infringing activities of his company Sloan International as alleged herein.

## JURISDICTION & VENUE

10.     This is an action for federal trademark infringement, trademark counterfeiting, unfair competition, false designation of origin, dilution, and cybersquatting pursuant to 15 U.S.C. 15 U.S.C. §1051, *et seq.*  Accordingly, this Court has subject matter jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

11.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state and common law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

12.     This Court has personal jurisdiction over Defendants because Defendants have committed tortious acts in this District through Defendants' advertisement and sale of goods using Plaintiff's trademarks and appearance through a website accessible in this District, as part of a broad, long-term e-commerce business that extended its reach to consumers in this District. Through their e-commerce website, Defendants have and continue to transact substantial business in this District, regularly solicit business from, do business with, and derive value from goods and services provided to, consumers in this Judicial District.

13.     Venue is proper within this District pursuant to 28 U.S.C. § 1391(b) and (c) and under 28 U.S.C. § 1400(b) because Defendants have committed substantial acts of infringement and counterfeiting, as well as acts of unfair competition and deceptive trade practices in this Judicial District, and because they provide goods and do business within this Judicial District.

**FACTUAL ALLEGATIONS**

Plaintiff Onyx, its Marks, and Brands

14.     Onyx Enterprises Int'l, Corp. is an e-commerce company that, among other things, distributes and sells a number of Onyx and third-party consumer products through Onyx's various branded e-commerce platforms.  Onyx was incorporated in May 2008.

15.     Onyx owns and operates the automotive industry's most well-known and respected online e-commerce platform, www.CARiD.com.  Onyx has been distributing and selling automotive parts and accessories under its CARiD® brand since 2009, including but not limited to tires, wheels, and wheel caps.  CARiD® has become one of the largest online retailers of aftermarket automotive parts and accessories in the nation.

16.     Onyx also distributes and sells automotive parts and accessories, among other consumer products, through a number of other iD brands for its corresponding e-commerce platforms:  BOATiD™, CAMPERiD™, MOTORCYCLEiD®, POWERSPORTSiD®, RACINGiD™, RECREATIONiD™, STREETiD®, TOOLSiD™, and TRUCKiD™.

17.     Onyx has enjoyed considerable success through its iD brands and its iD Marks have become distinctive and well-known in the industry as being among the very best online retail stores for automotive parts and accessories, among other products.  Onyx's iD brands and their reputation are among Onyx's most prized business assets.

18.     Onyx owns the following U.S. Trademark Registrations and pending U.S Trademark Applications for the following marks, copies of which are attached as **Exhibit A**:

| MARK | Reg./Ser. No. | Goods & Services |
|------|---------------|------------------|
| CARID | Reg. No. 3711746 | IC 035: Wholesale distributorships featuring automotive accessories; retail store services |

| | | |
|---|---|---|
| | | featuring automotive accessories; online retail store services featuring automotive accessories<br>(Date of First Use: at least as early as March 10, 2009) |
|  | Reg. No. 5804750 | IC 035: Distributorship services featuring parts and accessories for land vehicles and water vehicles; Distributorship services featuring goods for travel and outdoor recreational activities; Distributorship services featuring tools<br>(Date of First Use: at least as early as June 1, 2018) |
|  | Reg. No. 5658672 | IC 035: Wholesale distributorships featuring automotive parts and accessories; retail store services featuring automotive parts and accessories; online retail store services featuring automotive parts and accessories<br>(Date of First Use: at least as early as September 1, 2013) |
|  | Ser. No. 87412406 | IC 002: Sealer coatings for use in the sealing of vehicle parts and during vehicle repairs; coatings for industrial purposes, namely, paints, aerosol paints, rust treatment coatings, undercoats in the nature of industrial sealants for waterproofing and surface hardening, insulation coatings, and rubberized coatings in the nature of industrial sealants for waterproofing and surface hardening; anti-corrosive oils<br><br>IC 003: Chemical cleaners directed to the vehicle industries; windshield washing fluid; vehicle and car wax preparations<br><br>IC 004: Motor vehicle lubricants; Rust penetrant lubricants for vehicle exhaust systems, for hood release cables, for nuts and bolts, for shock absorbers, and other clips and cables of vehicles; penetrating oil; vehicle lubricants; vehicle lubricating greases; lubricating oils; automotive lubricants<br><br>IC 007:        Vehicle equipment, namely, engine mufflers, spark plugs, gaskets, and chucks for |

| | | |
|---|---|---|
| | | power-operated drills; metal engine gaskets for vehicles<br><br>IC 009:      Batteries for motor vehicles; battery maintenance equipment, namely, cables, lugs, connectors, terminals, hardware, protectors, cable assemblies, bolts, and booster cables; battery chargers for motor vehicles<br><br>IC 012: ATVs (all terrain vehicles); automobiles and structural parts therefor; brake discs for motorcycles; motor scooters and structural parts therefor; motorcycle drive chains ; motorcycle foot pegs; motorcycle sprockets; motorcycles and structural parts therefor; motorized bicycles; motorized dirt bikes for motocross and dune buggies; motorized vehicles, namely, go-carts; parts of motorcycles, namely, brake cables; parts of motorcycles, namely, brake calipers; parts of motorcycles, namely, brake levers; parts of motorcycles, namely, brake master cylinder assemblies; parts of motorcycles, namely, brake rotors; parts of motorcycles, namely, clutch cables; parts of motorcycles, namely, clutch master cylinder assemblies; parts of motorcycles, namely, handle bar grips; parts of motorcycles, namely, handle bar throttles; parts of motorcycles, namely, handle bar grips; parts of motorcycles, namely, handle bars; parts of motorcycles, namely, master cylinders; parts of motorcycles, namely, shift levers; parts of motorcycles, namely, brake master cylinder assemblies; parts of motorcycles, namely, clutch master cylinder assemblies; vehicle parts, namely, rearview mirrors; push scooters and structural parts therefor<br><br>IC 025: Clothing, namely, t-shirts, sweatshirts, headwear and footwear |
| BOATiD | Ser. No. 88238416 | IC 035: Online retail store services featuring consumer products, electronics, parts and accessories for boats and water vehicles, boat safety, and boat maintenance; computerized online ordering featuring general merchandise and general |

| | | |
|---|---|---|
| | | consumer goods for boats and water vehicles, boat safety, and boat maintenance |
| CAMPERiD | Ser. No. 88238468 | IC 035: Online retail store services in the field of outdoor consumer products, equipment, parts and accessories used with, or in association with, recreation vehicles, campers, cooking, towing, and other outdoor recreational activities; Online retail store services in the field of general merchandise and general consumer goods used for outdoor recreational activities |
| MOTORCYCLEiD | Reg. No. 5787890 | IC 035: Online retail store services featuring consumer products, electronics, apparel, protective wear, parts and accessories for motorcycles, dirt bikes, motocross bikes, scooters, and three-wheel bikes; computerized online ordering featuring general merchandise and general consumer goods including those used with motorcycles, dirt bikes, motocross bikes, scooters, and three-wheel bikes (Date of First Use: at least as early as July 1, 2018) |
| POWERSPORTSiD | Reg. No. 5787889 | IC 035: Online retail store services featuring consumer products, electronics, parts and accessories for powersports, namely, boating, snowmobiling, motorcycling, utility terrain vehicles, watercrafts, off-road vehicles, and all-terrain vehicles; computerized online ordering featuring general merchandise and general consumer goods including those used in support of powersports (Date of First Use: at least as early as July 1, 2018) |
| RACINGiD | Ser. No. 88303678 | IC 035: On-line retail store services featuring a wide variety of consumer goods of others; Online retail store services featuring consumer products, electronics, parts and accessories for land and water vehicles used for racing or high performance travel; Computerized online ordering featuring general consumer merchandise |
| RECREATIONiD | Ser. No. 88238588 | IC 035: Online retail store services in the field of consumer products, shoes, electronics, equipment, parts and accessories used with, or in association |

|  |  | with, walking, camping, backpacking, hiking, tailgating, cooking, hunting, fishing, biking, towing, and other outdoor recreational activities; Online retail store services in the field of general merchandise and general consumer goods used for outdoor recreational activities |
|---|---|---|
| STREETiD | Reg. No. 5850420 | IC 035: On-line retail store services featuring a wide variety of consumer goods of others. |
| TOOLSiD | Ser. No. 88238623 | IC 035: Online retail store services featuring consumer products, electronics, parts and accessories associated with tools, namely, power tools, hand tools, lawn and garden tools, air tools, automotive tools, and construction tools; Online retail store services in the field of general merchandise and general consumer goods used for or with tools |
| TRUCKiD | Reg. No. 5787891 | IC 035: Online retail store services in the field of electronics, consumer products, parts and accessories directed to, or used in association with, trucks, semi-trucks, semi-tractor trailers, fifth wheels, trailers and towing; computerized online ordering featuring general merchandise and general consumer goods for those in the field of trucks, semi-trucks, semi-tractor trailers, fifth wheels, trailers and towing (Date of First Use: at least as early as July 1, 2018) |

19.     The CARID registration (Reg. No. 3711746) pleaded above is "incontestable" under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and thereby is conclusive evidence of the validity of the registered mark, of Onyx's ownership of the mark, and of Onyx's exclusive right to use each of the registered marks in commerce in connection with the identified services, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

20.     Onyx also owns common law rights in the design marks depicted below, which Onyx has continuously used in interstate commerce for many years:



21.     Onyx has invested significant time, effort, and financial resources promoting, marketing, and advertising its iD Marks to make the iD brands among the leading e-commerce platforms for automotive parts and accessories in both the United States and abroad.

22.     Onyx allocates a substantial amount of money every year to create, develop, advertise and promote its iD Marks.

23.     Onyx has made an enormous investment and effort to develop global recognition and goodwill with manufacturers, distributors, resellers, industry publications, and consumers of vehicle parts and accessories.

24.     For example, in 2010, Onyx committed to building a focused wheel segment on its CARiD® platform.   Onyx invested significant time, money, resources, and development into building its fitment tools, which allow customers to understand how the offered products will fit

with their car and will look on their car.  This precise fitment information, associated with each product offered on www.CARiD.com, ensures that the customer gets the right wheel (or other part), for the right car, in the right model year.  These sophisticated platform features are unique in the industry, are synonymous with the CARiD® brand, and are a feature that sets CARiD® apart to its consumers.

25.     Onyx has also built up the reputation and goodwill of its iD Marks by ensuring high-quality customer service in connection with its iD brands and being one of the only automotive parts and accessories e-commerce platforms that has a dedicated technical support team to assist customers with installation, fitment questions, and technical product questions.

26.     Due to Onyx's hard work, marketing efforts, quality of customer service, and dedicated brand commitment, Onyx has developed considerable fame, distinction, consumer recognition, and goodwill in its iD Marks.

27.     The CARiD® brand has enjoyed such fame and distinction since well before Defendants' use of any confusingly similar marks.

28.     As one of the world's largest privately-owned marketers of automotive products, CARiD® is the premium brand in the retail automotive industry, receiving tremendous recognition and popularity.

29.     As an example, Onyx's CARiD® branded services currently has an "Elite" rating of 9.03/10 out of 93,786 reviews on www.ResellerRatings.com.   Onyx's CARiD® branded services has an average lifetime rating of 8.55/10 and an average rating of 9.25/10 out of the 5,978 reviews submitted within the past six months.  Based on the reviews submitted within the last six months, Onyx's CARiD® branded services has an average customer service rating of 8.99/10 and

a "chance of future purchase" rating of 8.92/10.  A true and correct copy of the CARiD® ratings from www.ResellerRatings.com is attached as **Exhibit B**.

30.    Onyx's CARiD® Facebook page currently has a 4.5/5 rating out of 18,257 reviews. A true and correct copy of the CARiD® Facebook ratings from www.Facebook.com is attached as **Exhibit C**.

31.    The CARiD® Instagram account currently has approximately 33,000 third-party followers while the CARiD® Facebook account currently has over 2.5 million third-party followers.  **Exhibit C**; **Exhibit D**, which is a true and correct copy of the CARiD® Instagram account page.

32.    Onyx has developed this same goodwill through its other iD brands in the tools, trucking, recreation, boating, camping, motorcycle, and racing industries.

33.    As a result of its efforts, Onyx has made a substantial amount of sales through its CARiD® and other iD brands in the United States and abroad.  Sales of products sold through Onyx's CARiD® and other iD branded services have far exceeded those of Onyx's competitors in the United States and abroad.

34.    Onyx has enjoyed considerable success through its iD brands and its iD Marks have become distinctive and well-known as a source of online retail store services for automotive parts and accessories, among other products.  Members of the consuming public readily associate Onyx's iD Marks as a source of Onyx's high-quality retail services.

35.    Like many other famous trademark owners, Onyx suffers ongoing daily and sustained violations of its respective trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Onyx's trademarks for the

twin purposes of (a) duping and confusing the consuming public and (b) earning substantial profits. These counterfeiters and infringers often create websites and marks, similar to Defendants' actions, that intentionally mimic the visual designs of Onyx's iD Marks, such as by using the same font, arrangements, and stylistic elements.

36.     To combat the harm caused by the combined actions of Defendants and others engaging in similar conduct, Onyx regularly expends significant amounts of money in connection with trademark enforcement efforts, including legal fees and investigative fees.

<u>Defendants' Acts of Counterfeiting and Infringement</u>

37.     On or around March 30, 2012, Defendant Sloan registered the domain for www.RIMSiD.com.

38.     Soon thereafter, Defendant Sloan launched the RIMSiD website and began distributing and selling aftermarket automotive parts and accessories, including but not limited to tires, wheels, and wheel caps throughout the United States under the infringing RIMSiD mark.

39.     On or around September 23, 2018, Defendant Sloan incorporated Sloan International.  Defendant Sloan is the owner of Sloan International and has authority and control over the actions of Sloan International.

40.     Upon information and belief, after its incorporation, Sloan International assumed operation and control of the RIMSiD website, social media accounts, and retail services provided under the RIMSiD mark.

41.     Upon information and belief, Defendant Sloan is still the registered owner of the RIMSiD website.

42.     Upon information and belief, at all times relevant hereto, Defendants in this action had full knowledge of Onyx's ownership of the iD Marks, including Onyx's respective, exclusive rights to use and license such intellectual property and the goodwill associated therewith.

43.     Defendant Sloan, individually and through Sloan International, has intentionally misappropriated Onyx's trademarks, likeness, and goodwill through the unlawful use of Onyx's iD Marks to distribute and sell automotive parts and accessories.

44.     Defendants have and continue to distribute and sell identical and/or similar automotive parts and accessories as Onyx.

45.     Defendants have and continue to market their retail services in the same channels of trade as Onyx and to the same types of consumers.

46.     The RIMSiD website, social media accounts, and marks directly incorporate Onyx's iD Marks and/or are confusingly similar variants of Onyx's iD Marks, as depicted in the below side-by-side comparisons:



| Onyx's iD Marks | Defendants' RIMSiD Mark |
|---|---|
| CARID<br>(Reg. No. 3711746 CARID)<br><br>**CARiD**<br><br>(as depicted on www.CARiD.com)<br><br>**iD**<br><br>(Reg. No. 5804750)<br><br>**iD**<br><br>(as depicted on www.CARiD.com) | **RIMSiD.com**<br><br>(as used on www.RIMSiD.com on 06/06/2019) |



(as depicted on www.BOATiD.com)

(as depicted on www.CAMPERiD.com)

(as depicted on
www.MOTORCYCLEiD.com)

(as depicted on
www.POWERSPORTSiD.com)

(as depicted on www.RECREATIONiD.com)

(as depicted on www.TOOLSiD.com)

(as depicted on www.TRUCKiD.com)

(Reg. No. 5658672)

(as currently used for the www.RIMSiD.com
website thumbnail)



(as posted to the CARiD® Facebook Account)



(as depicted on www.mkwwheels.com, listing CARiD® as an authorized dealer)



(as depicted on www.CARiD.com)



(as used on www.RIMSiD.com on 06/06/2019)



(as depicted in the current RIMSiD Facebook account profile picture)



(as depicted in the current RIMSiD Facebook account cover photo)



(as depicted in the current RIMSiD Instagram account profile picture)



(as depicted in the current RIMSiD Twitter account profile picture)

| | |
|---|---|
| |  |
| | (as depicted in the current RIMSiD Youtube account profile picture) |

47.     True and correct copies of the website screenshots for Onyx's current CARiD, BOATiD, CAMPERiD, MOTORCYCLEiD, POWERSPORTSiD, RECREATIONiD, TOOLSiD, and TRUCKiD websites depicting the above-referenced iD marks are attached as **Exhibit E**.  A true and correct copy of the website screenshot for the CARiD® Facebook Account depicting the above-referenced CARiD® mark can be found in **Exhibit C**.  A true and correct copy of the website screenshot for the MKW Wheels website, which lists CARiD® as an authorized dealer, is attached as **Exhibit F.**

48.     A true and correct copy of the website screenshot for the RIMSiD website, as captured on June 6, 2019, is attached as **Exhibit G**.  A true and correct copy of the website screenshot showing Defendants' RIMSiD thumbnail as it appears on the current RIMSiD website is attached as **Exhibit H**.   True and correct copies of the website screenshots for the RIMSiD Facebook, Instagram, Twitter, and YouTube accounts are attached as **Exhibit I**.

49.     Upon information and belief, Defendant Sloan initially created the RIMSiD website and name with the intention of creating consumer confusion and passing off the RIMSiD retail service as being associated with Onyx's CARiD® brand.

50.     Not only are Defendants currently infringing upon the stylized iD Marks owned by Onyx, but Defendants have been purposefully and systematically copying Onyx's iD Marks as well as the CARiD® brand's likeness since as early as 2013, if not earlier.

51.     Below is a side-by-side comparison, showing some examples of Defendants' systematic copying and imitation of Onyx's iD Marks and likeness through the years:





(as depicted on www.CARiD.com on 06/21/2014)

(as depicted on www.CARiD.com on 06/29/2015)

(as depicted on www. RIMSiD.com on 10/17/2015)

(as depicted on www.CARiD.com on 06/04/2018)

(as depicted on www. RIMSiD.com on 01/22/2019)

52.     True and correct copies of the archived website versions for www.CARiD.com as retrieved from www.web.archive.org and are attached as **Exhibit J**.  A true and correct copy of the website screenshot for the CARiD® Facebook account depicting the account profile photo on March 23, 2013 can be found in **Exhibit C**.  True and correct copies of the archived website versions for www.RIMSiD.com as retrieved from www.web.archive.org and are attached as **Exhibit K**.

53.     At all relevant times, Onyx began using its iD Marks, as depicted in Paragraph 51, prior to Defendants' use of the RIMSiD marks depicted in Paragraph 51.

54.     Throughout the years, after Onyx would create and begin using a new CARiD® or iD design, Defendants would knowingly and deliberately change its RIMSiD marks to match and/or incorporate features from the new CARiD® or iD design.

55.     Defendants' RIMSiD marks mimic the same or substantially indistinguishable font, word arrangements, and stylistic elements as those appearing in Onyx's iD Marks.

56.     For example, the below RIMSiD mark utilizes the same font and style for "iD" such as depicted in Onyx's iD mark, U.S. Reg. No. 5804750.



57.     As another example, comparing the two marks below, the RIMSiD mark:

(a) utilizes the same font for "RIMSiD" as is used in "CARiD";

(b) has the same "sheen" in the term "iD" that is used in "CARiD";

(c) has an identical arrangement of words;

(d) has the same phonological and morphological structure, as the prefix of the mark serves as the overall categorical goods to be sold, while the suffix "iD" serves as the brand recognition;

(e) utilizes the same font for the phrase underneath the term "RIMSiD" as the phrase underneath the "CARiD";

(f) has a similar two-color theme; and

(g) has the last two words in the phrase underneath the term "RIMSiD" in the same color as "iD", similar to the CARiD mark.





58.     The marks depicted in Paragraph 57 are identical except Defendant's RIMSiD mark

utilizes the word "RIMS", has different words in the phrase underneath it, and uses the color blue

instead of green.

59.     Defendants have also copied the look and feel of Onyx's websites:





www.CARiD.com                                    www. RIMSiD.com
(captured 06/05/2019)                            (captured 06/05/2019)

60.     Defendants have acted purposefully and in bad faith to usurp the substantial

goodwill that Onyx has developed under its iD Marks to confuse and deceive consumers into

believing that the RIMSiD website and services are in some way affiliated or connected to Onyx's iD brands when they are not.

61.     Defendants have made and will continue to make substantial profits and gains off of the goodwill and value Onyx has acquired through their iD Marks, to which the Defendants are not in law or equity entitled.

62.     Onyx is not affiliated or connected with Defendant or its services, nor has Onyx endorsed or sponsored Defendants or their services.

63.     Onyx has not in any way authorized Defendants' use of Onyx's iD Marks or likeness.

64.     Onyx has no control over the nature and quality of the services or goods that Defendants provide through the RIMSiD website or marks.

65.     Upon information and belief, Defendants do not provide services through the infringing and counterfeit RIMSiD website or marks that meet the high standard and quality that consumers have come to associate with Onyx's iD brands. *See* **Exhibit L**, which is a true and correct copy of a negative consumer review of Defendants' RIMSiD services.

66.     Defendants' use of the infringing and counterfeit RIMSiD website and marks, and their associated failure to meet the high standard and quality of the services associated with Onyx's iD Marks, have and continue to cause harm to the goodwill symbolized by Onyx's iD Marks and the reputation for quality and excellence that they embody.

67.     On June 17, 2019, shortly after discovering Defendant's use of the infringing and counterfeit RIMSiD website and marks, Onyx put Defendants on notice of Onyx's rights in its iD Marks and requested that Defendants cease using the infringing and counterfeit RIMSiD website

and marks.  Onyx sent a second notice to Defendants on July 8, 2019.  Defendants acknowledged receipt of both notices via return reply on July 17, 2019.

68.     Rather than cease using the infringing and counterfeit RIMSiD website and marks as requested, Defendants attempted to hide its infringing and counterfeit use of Onyx's iD Marks by scrubbing the RIMSiD website of the blatantly copied logo designs.

69.     After receiving the notice of infringement, Defendants changed the RIMSiD mark on the RIMSiD website to the below and denied ever using any copied logo designs.

**RIMSiD.com**

70.     Defendant's use of this new RIMSiD mark design fails to mitigate the likelihood of confusion with Onyx's iD Marks, especially considering Defendants' long-standing and repeated imitation of Onyx's iD Marks.

71.     Furthermore, the current RIMSiD website still depicts the infringing and counterfeit thumbnail logo below. *See* **Exhibit H**.



72.     The RIMSiD Facebook, Instagram, Twitter, and YouTube accounts also currently still depict the infringing and counterfeit logos as shown in **Exhibit I**.

73.     Defendants continue to advertise, market, and sell competing automotive parts and accessories in the same industry and through the same channels of trade using its infringing and counterfeit RIMSiD website and marks.

74.     Defendants' actions have diluted and severely injured Onyx's iD Marks.

75.     Absent injunctive relief, Onyx will continue to suffer irreparable harm in the loss of control of its reputation and goodwill in its iD Marks.

76.     This and all other damage to Onyx's reputation and goodwill in its iD Marks resulting from the conduct alleged in this action cannot be easily quantified nor could it be undone through an award of money damages alone.

## COUNT I
**Federal Trademark Counterfeiting and Infringement in Violation of 15. U.S.C. § 1114**
**(Against Both Defendants)**

77.     Onyx incorporates the allegations in Paragraphs 1 through 76 as if fully set forth herein.

78.     This cause of action arises under Section 32(1)(a) and (b) of the Lanham Act, 15 U.S.C. § 1114.

79.     Onyx is the owner of all right, title, and interest in, to and under its iD Marks, and all goodwill appurtenant thereto.

80.     Defendants have, without Onyx's consent, used counterfeit and colorable imitations of Onyx's federally registered iD Marks in commerce on or in connection with the sale, offering for sale, distribution, and/or advertising of goods and/or services for the sale of automotive parts and accessories.

81.     Defendants have, without Onyx's consent, used spurious designations that are identical with and/or substantially indistinguishable from Onyx's iD marks, as registered under U.S. Registration Nos. 5804750 and 5658672, on or in connection with distributorship and retail store services featuring automotive parts and accessories.

82.     Defendants have, without Onyx's consent, used spurious designations that are colorable imitations of Onyx's iD marks, as registered under U.S. Registration Nos. 3711746, 5787890, 5787889, and 5787891, on or in connection with distributorship and retail store services featuring automotive parts and accessories.

83.     The Defendants' unauthorized use of the Onyx's federally registered iD Marks is likely to cause confusion, mistake, or deception; cause the public to believe that Defendants' services are authorized, sponsored or approved by Onyx when they are not; and result in the Defendants unfairly and illegally benefitting from Onyx's goodwill.

84.     Defendants' knowing, intentional, unlicensed, unconsented to, and otherwise unauthorized use of Onyx's iD Marks and/or substantially indistinguishable variations thereof on and in connection with distributorship and retail store services constitutes counterfeiting and infringement of Onyx's iD Marks in commerce, in violation of 15 U.S.C. § 1114.

85.     The activities of Defendants complained of herein constitute willful and intentional counterfeiting and infringement of Onyx's iD Marks in total disregard of Onyx's proprietary rights and were done despite Defendants' knowledge that use of these marks or any reproduction, copy, or colorable imitation thereof was and is in direct contravention of Onyx's rights.  Even though Defendants received notice of its infringement, Defendants intentionally and willfully continue their unauthorized use of the registered iD marks. Onyx is therefore entitled to statutory and treble damages.

86.     Defendants' unlawful actions have caused and are continuing to cause Onyx irreparable injury and monetary damages.

87.     As a direct and proximate result of Defendants' conduct, Onyx has been and is likely to be substantially injured in its business, including its goodwill and reputation acquired under the iD Marks and brands, resulting in lost revenues and profits and diminished goodwill.

88.     Onyx has no adequate remedy at law and, if Defendants' activities are not preliminarily and permanently enjoined, Onyx will continue to suffer irreparable harm and injury.

89.     Onyx is therefore entitled to recover actual and treble damages, attorney fees, costs pursuant to 15 U.S.C. § 1117 and injunctive relief pursuant to 15 U.S.C. § 1116.

**COUNT II**
**Federal Trademark Infringement, Unfair Competition, and False Designation of Origin in Violation of 15. U.S.C. § 1125(a)**
**(Against Both Defendants)**

90.     Onyx incorporates the allegations in Paragraphs 1 through 89 as if fully set forth herein.

91.     This cause of action arises under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), *et seq.*

92.     Onyx is the owner of all right, title, and interest in, to and under its iD Marks, and all goodwill appurtenant thereto.

93.     Onyx's iD Marks have been continuously and widely used by Onyx nationwide and abroad and on its website.  Onyx intends to preserve and maintain its rights to the iD Marks and to continue the use of the iD Marks in connection with its distributorship and retail store services relating to the distribution and sale of automotive parts and accessories.

94.     By virtue of the renown of the iD Marks, the iD Marks have developed secondary meaning and significance in the mind of the relevant public.  Goods and services associated with

the iD Marks are immediately associated by the purchasing public with Onyx's iD brands and its automotive parts and accessories-based e-commerce platforms.

95.     Without Onyx's consent, Defendants have and continue to use identical and/or confusingly similar imitations of Onyx's iD Marks in interstate commerce in connection with the promotion, advertisement, and operation of identical distributorship and retail store services featuring automotive parts and accessories.

96.     Defendants' unauthorized use of Onyx's iD marks and/or confusingly similar variations thereof, is causing and is likely to continue to cause confusion, or to cause mistake, or to deceive, consumers and the relevant public into falsely believing that Defendants are affiliated, connected, or associated with Onyx's iD brands and the iD Marks.

97.     The acts of Defendants as alleged herein and above constitute trademark infringement, unfair competition, false representation, and/or false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

98.     Defendants have engaged in this conduct knowingly, willfully, and in bad faith, in total disregard of Onyx's proprietary rights.   Even though Defendants received notice of its infringement, Defendants intentionally and willfully continued their unauthorized use of Onyx's iD marks.   Onyx is therefore entitled to statutory and treble damages.

99.     Defendants' conduct has deprived Onyx of its rightful ability to control the quality of goods and services uniquely associated with Onyx's iD Marks and to ensure that their associated, valuable goodwill, and reputation are protected.   Defendants' unlawful actions have caused and are continuing to cause Onyx irreparable injury and monetary damages.

100.     As a direct and proximate result of Defendants' conduct, Onyx has been and is likely to be substantially injured in its business, including its goodwill and reputation acquired under the iD Marks and brands, resulting in lost revenues and profits and diminished goodwill.

101.     Onyx has no adequate remedy at law and, if Defendants' activities are not preliminarily and permanently enjoined, Onyx will continue to suffer irreparable harm and injury.

102.     Onyx is therefore entitled to recover actual and treble damages, attorney fees, and costs pursuant to 15 U.S.C. § 1117 and injunctive relief pursuant to 15 U.S.C. § 1116.

**COUNT III**
**Federal Trademark Dilution in Violation of 15 U.S.C. § 1125(c)**
**(Against Both Defendants)**

103.     Onyx incorporates the allegations in Paragraphs 1 through 102 as if fully set forth herein.

104.     Onyx's iD marks are famous and were famous before Defendants' first commercial use of their counterfeit and confusingly similar RIMSiD domain and RIMSiD marks, within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125, based on extensive sales and advertising under Onyx's iD Marks.

105.     Defendants have willfully and intentionally used and continue to use the iD Marks or confusingly similar variations thereof in connection with the advertisement, promotion, and sale of Defendants' goods and services under the RIMSiD domain and RIMSiD marks.

106.     Defendants' use of Onyx's iD Marks and confusingly similar variations thereof, have diluted and are likely to dilute, the distinctive quality of the iD Marks, causing them to be blurred in the minds of consumers and to lose their commercial significance as a designation of source and origin.  This is particularly disturbing as Defendants have poor reviews published

online, all of which dilute the goodwill and value in the Onyx brand as a result of the confusion, mistake, and deception.

107.     Defendants' use of Onyx's iD Marks and confusingly similar variations thereof, has weakened, and is likely to weaken, the commercial magnetism of Onyx's iD Marks and to diminish their ability to evoke their original associations.

108.     By Defendants' conduct, Defendants have diluted, and are diluting, the selling power of Onyx's iD Marks by blurring their uniqueness and singularity, and by tarnishing them with negative associations, in violation of 15 U.S.C. § 1125(c).

109.     Defendants have used and continue to use Onyx's iD Marks and confusingly similar variations thereof, willfully and with the intent to dilute the iD Marks, and with the intent to trade on the reputation and goodwill of Onyx's iD Marks.

110.     As a direct and proximate result of Defendants' conduct, Onyx has suffered irreparable harm.

111.      Onyx has no adequate remedy at law and, if Defendants' activities are not preliminarily and permanently enjoined, Onyx will continue to suffer irreparable harm and injury.

112.     Onyx is therefore entitled to recover actual and treble damages, attorney fees, and costs pursuant to 15 U.S.C. § 1117 and injunctive relief pursuant to 15 U.S.C. § 1116.

### COUNT IV
### Cybersquatting in Violation of 15. U.S.C. § 1125(d)
### (Against Both Defendants)

113.     Onyx incorporates the allegations in Paragraphs 1 through 112 as if fully set forth herein.

114.    The domain name RIMSiD.com is confusingly similar to Onyx's registered CARiD® word mark, which was distinctive and/or famous at the time Defendant Sloan registered the RIMSiD.com domain name.

115.    Defendant Sloan registered and used the RIMSiD.com domain name knowing it was confusingly similar to Onyx's CARiD® word mark.

116.    Defendant Sloan International, as authorized and directed by Defendant Sloan, continued to use the RIMSiD.com domain name knowing it was confusingly similar to Onyx's CARiD® word mark.

117.    Defendants have acted with bad-faith intent to profit from the CARiD® word mark and the goodwill associated with it by registering and using the domain name RIMSiD.com.

118.    Defendants' activities as alleged herein and above constitute cybersquatting in violation of § 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

119.    Defendants' unlawful actions have caused and are continuing to cause Onyx irreparable injury and damages.

120.    Onyx has no adequate remedy at law and, if Defendants' activities are not preliminarily and permanently enjoined, Onyx will continue to suffer irreparable harm and injury.

121.    Onyx is therefore entitled to recover actual and treble damages, attorney fees, and costs pursuant to 15 U.S.C. § 1117 and injunctive relief pursuant to 15 U.S.C. § 1116.

<u>**COUNT VI**</u>
**Trademark Infringement in Violation of Colorado Common Law**
**(Against Both Defendants)**

122.    Onyx incorporates the allegations in Paragraphs 1 through 121 as if fully set forth herein.

123.     Onyx is the owner of valid common law rights in the iD Marks which it has used continuously and in connection with Onyx's goods and services prior to Defendants' unauthorized use of their infringing RIMSiD marks.

124.     Defendants' conduct as set forth above constitute trademark infringement in violation of Colorado common law.

125.     Defendants are promoting and otherwise advertising its automotive retail store services under marks that are identical or confusingly similar variations of Onyx's iD Marks.

126.     Defendants' use of their infringing RIMSiD marks is likely to cause, has caused, and will continue to cause confusion, mistake, or deception as to the sponsorship, affiliation, or source of Defendants' goods and services in that consumers and others are likely to believe Defendants' goods and services are legitimately connected with or approved by Onyx and/or its iD brands in violation of Colorado common law.

127.     Defendants have engaged in this conduct knowingly, willfully, and in bad faith.

128.     Defendants' unlawful actions have caused and are continuing to cause Onyx irreparable injury and monetary damages.

129.     As a direct and proximate result of Defendants' conduct, Onyx has been and is likely to be substantially injured in its business, including its goodwill and reputation acquired under the iD Marks and brands, resulting in lost revenues and profits and diminished goodwill, in an amount as yet not fully ascertained.

130.     Onyx has no adequate remedy at law and, if Defendants' activities are not preliminarily and permanently enjoined, Onyx will continue to suffer irreparable harm and injury.

## COUNT VII
### Unfair Competition in Violation of Colorado Common Law
### (Against Both Defendants)

131.    Onyx incorporates the allegations in Paragraphs 1 through 130 as if fully set forth herein.

132.    Onyx's iD marks have become well and favorably known throughout the United States, including the State of Colorado.

133.    Defendants' conduct as set forth above constitute unfair competition, false representation, and/or false designation of origin, which are have and/or are likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association with Onyx and/or its iD brands, or origin, sponsorship, or approval of the infringing and counterfeit RIMSiD services by Onyx and/or its iD brands in violation of Onyx's rights at common law and under the law of the State of Colorado.

134.    Defendants' conduct as set forth above constitutes unlawful "passing off" under Colorado unfair competition common law.

135.    Defendants have engaged in this conduct knowingly, willfully, and in bad faith.

136.    Defendants' intentional and willful actions have caused and are continuing to cause Onyx irreparable injury and monetary damages.

137.    As a direct and proximate result of Defendants' conduct, Onyx has been and is likely to be substantially injured in its business, including its goodwill and reputation acquired under the iD Marks and brands, resulting in lost revenues and profits and diminished goodwill, in an amount as yet not fully ascertained.

138.    Onyx has no adequate remedy at law and, if Defendants' activities are not preliminarily and permanently enjoined, Onyx will continue to suffer irreparable harm and injury.

**COUNT VIII**
**Deceptive Trade Practices in Violation of the Colorado Consumer Protection Act**
**(Against Both Defendants)**

139.    Onyx incorporates the allegations in Paragraphs 1 through 138 as if fully set forth herein.

140.    Defendants' conduct as set forth above constitutes deceptive trade practices in violation of Colorado's Consumer Protection Act, Colo. Rev. Stat. § 6-1-115(1)(b) and (c).

141.    Defendants' use of Onyx's iD Marks and confusingly similar variations thereof, falsely suggests Onyx and/or its iD brands as the source of Defendants' goods and services.

142.    In the course of Defendants' business, Defendants have and continue to make false representations as to the source, sponsorship, approval, or certification of goods and services provided by Defendants in order to deceive consumers into believing that Defendants' goods and services are sponsored, approved, or certified by Onyx and/or its iD brands.

143.    In the course of Defendants' business, Defendants have and continue to make false representations to deceive consumers into believing that Defendants and/or their goods and services are affiliated, connected, or associated with Onyx and/or its iD brands.

144.    Defendants have engaged in this conduct knowingly, willfully, and in bad faith.

145.    Defendants' actions have caused and will likely continue to cause confusion among unsuspecting consumers familiar with the iD Marks and brands, which are used to identify Onyx's goods and services, and thereby significantly impact the public as actual or potential consumers.

146.     Defendants' unlawful actions have caused and are continuing to cause Onyx irreparable injury and monetary damages.

147.     As a direct and proximate result of Defendants' conduct, Onyx has been and is likely to be substantially injured in its business, including its goodwill and reputation acquired under the iD Marks and brands, resulting in lost revenues and profits and diminished goodwill, in an amount as yet not fully ascertained.

148.     Onyx has no adequate remedy at law and, if Defendants' activities are not preliminarily and permanently enjoined, Onyx will continue to suffer irreparable harm and injury.

149.     Onyx is therefore entitled to recover actual and treble damages, attorney fees, and costs pursuant to Colo. Rev. Stat. § 6-1-113(2).

## PRAYER FOR RELIEF

WHEREFORE, Onyx prays for judgment and relief against Defendants as follows:

A.     For preliminary and permanent injunctive relief enjoining Defendants and any principals, agents, servants, employees, successors and assigns of Defendants and all those in privity, concert or participation with Defendants from:

(i)     imitating, copying, duplicating or otherwise making any use of Onyx's iD Marks or any mark confusingly similar to Onyx's iD mark;

(ii)     using any unauthorized copy or colorable imitation of Onyx's iD marks in such fashion as is likely to relate or connect Defendants with Onyx;

(iii)     using any false designation of origin or false description which can or is likely to lead the trade or public, or individual members thereof, to believe mistakenly that

any service advertised, promoted, offered or sold by Defendants is sponsored, endorsed, connected with, approved or authorized by Onyx;

(iv)    causing likelihood of confusion or injury to Onyx's business reputation and to the distinctiveness of the Onyx's iD marks by unauthorized use of the iD marks or any mark confusingly similar to the iD marks;

(v)    engaging in any other activity constituting unfair competition or infringement of Onyx's iD marks or Onyx's rights in, or to use, or to exploit the same;

(vi)    assisting, aiding or abetting another person or business entity in engaging

(vii)    or performing any of the activities enumerated in subparagraphs (i) through (v) above.

B.    Find that Defendants have infringed upon Onyx's iD Marks in violation of federal and common law and damaged Onyx's goodwill by Defendants' conduct.

C.    Find that Defendants have unfairly competed with Plaintiff by the acts complained of herein in violation of federal law and common law.

D.    Find that the acts of Defendants constitute a violation of the **Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-115.**

E.    For an order requiring the transfer of the infringing website, www.RIMSiD.com, to Onyx.

F.    For an order requiring Defendants to remove any and all references to the iD Marks, including any company or account names, logos, photographs or videos, and/or any other posts or references, from the Internet and social media outlets, such as Facebook, Instagram, Twitter, and Youtube.

G.      Find Defendants liable and award to Onyx monetary damages in an amount to be fixed by the Court in its discretion as just, including all of the Defendants' profits or gains of any kind, resulting from Defendants' willful infringement, counterfeiting, dilution, cybersquatting, and/or acts of unfair competition, said amount to be trebled and exemplary damages where applicable in view of the intentional nature of the acts complained of herein, pursuant to 15 U.S.C. § 1117, Colo. Rev. Stat. § 6-1-113(2), and the common law of the State of Colorado;

H.      Award to Onyx statutory damages to the full extent permitted by law;

I.      Award to Onyx its attorneys' fees, due to the exceptional nature of this case, and all of Onyx's costs and expenses of litigation pursuant to 15 U.S.C. § 1117(a) and Colo. Rev. Stat. § 6-1-113(2); and

J.      Award to Onyx pre-judgment and post-judgment interest;

K.      Grant to Onyx such other and further relief as the Court may deem just, proper and equitable under the circumstances.

## JURY DEMAND

Plaintiff Onyx Enterprises Int'l, Corp. demands a trial by jury on all issues so triable.

Dated: October 21, 2019                         Respectfully submitted,

                                                */s/Aaron P. Bradford*
                                                Aaron P. Bradford, Esq.
                                                Cindy N. Pham, Esq.
                                                BRADFORD, LTD
                                                2701 Lawrence Street, Suite 104
                                                Denver, Colorado 80205
                                                Telephone: (303) 325-5467
                                                Facsimile: (844) 406-5294

Email: Aaron@apb-law.com
Email: Cindy@apb-law.com

*Counsel for Plaintiff Onyx Enterprises Int'l, Corp.*